IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| COURTNEY BROOKE MOON, )<br>)<br>)<br>Plaintiff, )<br>)<br>v.                                                       )<br>)<br>OKLAHOMA DEPARTMENT OF  )<br>CORRECTIONS, LEXINGTON,    )<br>)<br>)<br>Defendant. ) | Case No. CIV-22-103-PRW |

## ORDER

Before the Court is Defendant Oklahoma Department of Corrections ("ODOC")'s Motion for Summary Judgment (Dkt. 20). For the reasons that follow, the Motion (Dkt. 20) is **GRANTED**.

### *Background*

This hostile work environment sexual harassment claim arises out of Plaintiff Courtney Brooke Moon's employment with Defendant Oklahoma Department of Corrections ("ODOC").[1] In June 2017, Moon began working as a case manager at ODOC's Lexington Assessment and Reception Center. Moon received a promotion to a Case Manager III position in October 2017, a position she retained until leaving ODOC in 2020.

Shortly after beginning her employment, Moon came into contact with another

---

[1] At this stage, the Court "view[s] the evidence in the light most favorable to the party opposing summary judgment"—here, Moon. *Christoffersen v. United Parcel Serv., Inc.*, 747 F.3d 1223, 1227 (10th Cir. 2014).

1

ODOC employee, Shaun Tabon. For Moon's entire tenure, Tabon also held the formal title of Case Manager III. Though the parties dispute the exact timeline and precipitating events, Moon and Tabon soon became engaged in conduct that was sexual in nature. For over two years, the parties exchanged numerous messages via Facebook Messenger, many of which contained sexual references. Their interactions, however, were not limited to remote messaging. Instead, Moon and Tabon frequently interacted at work, often spending considerable time by themselves or with others on smoke breaks. And on several occasions, their interactions resulted in physical touch that was sexual in nature. But while Tabon claims these interactions were consensual, Moon claims Tabon's advances were unwelcomed and constituted sexual harassment. This course of conduct continued well into 2020.

In September 2020, Moon sent an email to one of her supervisors, Jason Bryant, requesting a meeting to discuss work that had been reassigned from her.[2] The email contained no mention of any alleged sexual harassment. The meeting was held on September 11, 2020, and was attended by Bryant and another one of Moon's supervisors, Travis Gray. Three days after the meeting, Moon submitted a letter of resignation from her position at ODOC.[3] Like her email requesting the meeting with Bryant, Moon's letter of resignation made no mention of sexual harassment. Bryant and Gray say that Moon made no mention of any sexual harassment at the September 11 meeting. Moon, however, now

---

[2] *See* Ex. 20 (Dkt. 20), at 1–2.
[3] *See* Ex. 22 (Dkt. 20), at 1.

claims she informed Bryant and Gray at the meeting of Tabon's sexual harassment and requested appropriate action.[4]

Moon filed this lawsuit a year-and-a-half later. She claims that Tabon's conduct created actionable hostile work environment sexual harassment and that ODOC's failure to take appropriate action following her putting Gray and Bryant on notice in the September 11, 2020, meeting violated Title VII of the Civil Rights Act of 1964's prohibition on discrimination on the basis of sex. After a period of discovery, ODOC filed this Motion for Summary Judgment. ODOC argues, among other things, that Moon has failed to create a genuine dispute of material fact on several elements of her claim that are necessary to hold ODOC responsible for Tabon's alleged harassment. Specifically, ODOC argues that because, in its view, Tabon was not a supervisor under Title VII, Moon is required to at least create a genuine dispute that ODOC was on notice of Tabon's harassment. But since Moon's only support for ODOC being put on notice is her own self-serving, uncorroborated deposition testimony, ODOC maintains that Moon has failed to create a genuine dispute on that issue and that summary judgment is therefore appropriate.

Moon disagrees. At the outset, Moon maintains that she has created a genuine dispute as to whether Tabon was her supervisor, at least for a period of the alleged harassment. This would render summary judgment inappropriate, Moon points out,

---

[4] Even under her own version of events, Moon concedes that she made no attempt to put ODOC on notice of Tabon's conduct towards her prior to this meeting. *See* Pl.'s Resp. (Dkt. 24), at 4–5, 7, 12.

3

because ODOC would then be subject to vicarious liability, regardless of notice.[5] But even if she has failed to create a genuine dispute regarding Tabon's status as a supervisor, Moon argues that summary judgment would still be inappropriate. Though she agrees with ODOC regarding the appropriate legal framework that must be applied to her claim,[6] Moon argues that her uncorroborated deposition testimony is sufficient to create a genuine dispute on the issue of whether she ever informed ODOC of the alleged harassment.

### *Legal Standard*

Rule 56(a) of the Federal Rules of Civil Procedure requires "[t]he court [to] grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In deciding whether summary judgment is proper, the Court does not weigh the evidence and determine the truth of the matter asserted, but instead determines only whether there is a genuine dispute for trial before the fact-finder.[7] The movant bears the initial burden of demonstrating the absence of a genuine, material dispute and an entitlement to judgment.[8] A fact is "material" if, under the substantive law, it is essential to the proper disposition of the claim.[9] A dispute

---

[5] Unless, of course, ODOC could prevail at summary judgment on its affirmative defense. *See* Def.'s Mot. for Summ. J. (Dkt. 20), at 23–28.

[6] *See* Pl.'s Resp. (Dkt. 24), at 12 ("Defendant correctly points out that an employer is only obligated to respond to harassment of which it actually knew, or in the exercise of reasonable care should have known.").

[7] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1251 (10th Cir. 2015).

[8] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[9] *Anderson*, 477 U.S. at 248; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way.[10]

If the movant carries its initial burden, the nonmovant must then assert that a material fact is genuinely disputed and must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; by "showing that the materials cited [in the movant's motion] do not establish the absence . . . of a genuine dispute"; or by showing that the movant "cannot produce admissible evidence to support the fact."[11] The nonmovant does not meet its burden by "simply show[ing] there is some metaphysical doubt as to the material facts"[12] or theorizing a plausible scenario in support of its claims. Instead, "the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[13]

When, as here, the nonmoving party has the ultimate burden of persuasion at trial, the moving party "has both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter

---

[10] *Anderson*, 477 U.S. at 248; *Adler*, 144 F.3d at 670.

[11] Fed. R. Civ. P. 56(c)(1); *see also Celotex Corp.*, 477 U.S. at 322.

[12] *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[13] *Neustrom*, 156 F.3d at 1066 (quoting *Anderson*, 477 U.S. at 251–52); *Bingaman v. Kan. City Power & Light Co.*, 1 F.3d 976, 980 (10th Cir. 1993)).

of law."[14] "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial."[15] "Once the moving party points out the absence of evidence to create a 'genuine issue' of a 'material fact' on which the non-moving party bears the burden of proof at trial, . . . [t]he non-moving party must set forth specific facts showing there is a genuine issue for trial."[16]

## *Discussion*

Title VII of the federal Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex."[17] That text has long been interpreted to prohibit sexual harassment in the employment context.[18] In addition to quid pro quo sexual harassment, Title VII also

---

[14] *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002), *as amended on denial of reh'g* (Jan. 23, 2003). In deciding this Motion, the Court does not reach whether summary judgment is appropriate under ODOC's affirmative defense, which ODOC would bear the burden of establishing at trial.

[15] *Id.*

[16] *Otis v. Canadian Valley-Reeves Meat Co.*, 884 F. Supp. 446, 449–50 (W.D. Okla. 1994) (quoting *Matsushita Elec. Indus. Co.*, 475 U.S. at 586), *aff'd*, 52 F.3d 338 (10th Cir. 1995).

[17] 42 U.S.C. § 2000e–2(a)(1).

[18] *See Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1413 (10th Cir. 1987) ("Sexual harassment . . . is now universally recognized as employment discrimination within the meaning of Title VII."); *Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 65 (1986) ("Without question, when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor 'discriminate[s]' on the basis of sex.").

prohibits hostile work environment sexual harassment.[19] This type of sexual harassment involves a work environment that is infused with conduct by supervisors, co-workers, or third parties that is sexual in nature or sex-based. Such harassment is actionable under Title VII "only when it is sufficiently severe or pervasive such that a reasonable person would find the work environment to be hostile or abusive and the employee in fact perceived it to be so."[20]

Because a Title VII claim is against an "employer," a plaintiff must establish a basis for holding the employer liable for the conduct of a harasser. When, as here, the employer and the alleged perpetrator are distinct, the first key issue is the connection between the two for purposes of employer liability under Title VII.[21] When a claim is based on a hostile work environment created by a supervisor, the employer is vicariously liable unless it can show as a defense that it exercised reasonable care to prevent and promptly correct the harassment and that the employee unreasonably failed to use the employer's remedial procedures.[22] Where, however, the harassment is by non-supervisory co-workers, the employer's liability is determined by a negligence standard.[23] That standard is met if the

---

[19] *See Meritor Sav. Bank*, 477 U.S. at 64–67.

[20] *Debord v. Mercy Health Sys. of Kan., Inc.*, 737 F.3d 642, 650 (10th Cir. 2013) (cleaned up).

[21] *See Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013).

[22] *See Debord*, 737 F.3d at 650, 652–53; *Helm v. Kansas*, 656 F.3d 1277, 1285 (10th Cir. 2011).

[23] *See Debord*, 737 F.3d at 650.

employer knew or should have known of the harassment and failed to take corrective action.[24]

I.      *Tabon was not a supervisor under Title VII.*

The first key inquiry, therefore, is whether there is a genuine dispute that Tabon was a supervisor under Title VII. The Supreme Court's seminal case on the definition of a "supervisor" under Title VII is *Vance v. Ball State University*.[25] *Vance* rejected a more informal, "nebulous" definition of supervisor, and instead held that an employee may be considered a supervisor "only when the employer has empowered that employee to take tangible employment actions against the victim, *i.e.,* to effect a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'"[26]

Here, ODOC has put forward evidence that Tabon had no power to take tangible employment actions against Moon. For the entire period relevant to Moon's claims, Moon and Tabon held the same position at ODOC: each was a Case Manager III.[27] ODOC has pointed to numerous pieces of evidence explaining that a Case Manager III has no

---

[24] *Id.*

[25] 570 U.S. 421 (2013).

[26] *Id.* at 431.

[27] *See* Def.'s Mot. for Summ. J. (Dkt. 20), at 20 n.4 (pointing out, without subsequent contradiction by Moon, that "[Moon] does not assert that any of the *alleged* sexual harassment occurred before she was promoted to a Case Manager III position" (emphasis in original)).

supervisory power over another Case Manager III or any other employee; they hold no power to hire, fire, reassign, or make decisions causing a significant change in benefits.[28] Nor, according to evidence submitted by ODOC, did Tabon's individual duties or authorities deviate from this established structure.[29] Thus, ODOC has put forward admissible evidence demonstrating that Tabon lacked the necessary authority to make him a supervisor under *Vance*.

Moon's attempts to create a genuine dispute on this issue are unavailing. Moon primarily relies on statements made by Tabon that he had "seniority" over Moon. But Moon provides no evidence indicating that Tabon's seniority empowered him to take any tangible employment actions against Moon. And ODOC has put forward undisputed evidence that Tabon's "seniority" did not grant him any "authority to hire anyone, fire anyone, reassign someone to a different job with significantly different responsibilities, or making any decision causing a significant change in benefits."[30] At most, Tabon's seniority merely gave him minor perks, like priority status in selecting a new office when one came available.[31] In other words, Tabon's seniority did not make him Moon's "supervisor" as that term is used in the context of Title VII.[32]

---

[28] *See, e.g.*, Ex. 11 (Dkt. 20), at 1.

[29] *See, e.g.*, Ex. 14 (Dkt. 20), at 1.

[30] *See, e.g.*, Ex. 11 (Dkt. 20), at 1; *see also id.* ("I have never indicated that a LARC employee has any authority over another simply because he or she has worked at the facility for a longer period of time.").

[31] *Id.*

[32] *See Vance*, 570 U.S. at 431. Moon's Response also asserts that "[w]hen supervisors were off the Unit Mr. Tabon was made acting supervisor over Plaintiff." Pl.'s Resp. (Dkt. 24),

9

II. *Moon has failed to create a genuine dispute of material fact that ODOC knew of the alleged harassment.*

Because Moon has failed to create a genuine dispute of material fact on Tabon's status as a non-supervisory co-worker, Moon must be able to demonstrate that ODOC knew of the alleged harassment.[33] But she has failed to create a genuine dispute on that issue.

The only piece of evidence Moon relies on to establish ODOC's knowledge of the harassment while she was still employed is her own deposition, in which Moon claimed she reported the harassment to two of her supervisors, Jason Bryant and Travis Gray, in the September 11, 2020, meeting.[34] But a party's own self-serving, uncorroborated statement is insufficient to create a genuine dispute on a material fact.[35]

---

at 7. But the only evidence cited for this proposition is Moon's deposition, which merely repeats her reference to Tabon's messages referencing his seniority and asserts in a conclusory manner, unsupported by any surrounding facts, that Tabon was an acting supervisor on a few occasions. *But see* Ex. 11 (Dkt. 20), at 1 (explaining, without any contravening evidence submitted by Moon, that a Case Manager IV, the position Moon seems to assert Tabon would have held when he was acting as a supervisor, does not hold the power to take any of the tangible employment actions required by *Vance*). Moon's statements fail to establish any facts suggesting that Tabon had any power to take tangible employment actions against Moon. *See Vance*, 570 U.S. at 431. These conclusory statements are insufficient to create a genuine dispute as to Tabon's status under Title VII.

[33] It's true that an employer may also be liable for a sexual harassment claim if it should have known of the harassment, i.e., it had constructive notice. *See Debord*, 737 F.3d at 651. But Moon relies only on an actual notice theory and makes no attempt to demonstrate constructive notice. *See* Pl.'s Resp. (Dkt. 24), at 12–13; *see also Otis*, 884 F. Supp. at 449–50 ("Once the moving party points out the absence of evidence to create a 'genuine issue' of a 'material fact' on which the non-moving party bears the burden of proof at trial, . . . [t]he non-moving party must set forth specific facts showing there is a genuine issue for trial." (quoting *Matsushita Elec. Indus. Co.*, 475 U.S. at 586)).

[34] *See* Pl.'s Resp. (Dkt. 24), at 12.

[35] *See Viviani v. Coffey & Assocs., Inc.*, 2023 WL 3444696, at *7 (W.D. Okla. May 12, 2023).

10

For his part, Bryant's declaration explains that "[d]uring the [September 2020] meeting, Ms. Moon did not report to Mr. Gray and I that she was being sexual[ly] harassed by Shaun Tabon."[36] And Bryant's version of events is corroborated by Gray, the only other person present at the meeting, who explained in his deposition that "Moon did not report any sexual harassment by Mr. Tabon against her during the September 11th meeting."[37]

Moon's own contemporaneous actions further undermine her subsequent, self-serving deposition testimony. In her own email requesting the September 2020 meeting, Moon made no mention of sexual harassment, instead requesting the meeting to discuss her work being reassigned to other employees.[38] And in her resignation notice, dated just three days after the meeting, Moon again made no mention of Tabon or sexual harassment.[39] While this evidence, in and of itself, does not necessarily establish whether Moon brought up Tabon's alleged harassment at the September 2020 meeting, it does nothing to corroborate Moon's subsequent self-serving testimony.

Moon has, therefore, failed to create a genuine dispute on an essential element of her claim—that ODOC knew or should have known about Tabon's alleged harassment of Moon. ODOC has put forward affirmative evidence that Moon did not notify her supervisors in the September 2020 meeting or any other ODOC employee while she was still an employee. And since the only evidence Moon puts forward to rebut ODOC's

---

[36] Ex. 11 (Dkt. 20), at 2.

[37] Ex. 12 (Dkt. 20), at 9.

[38] See Ex. 20 (Dkt. 20), at 1–2.

[39] See Ex. 22 (Dkt. 20), at 1.

evidence is her own uncorroborated, self-serving statements, she has failed to create a genuine dispute, and her claim cannot survive summary judgment.

## *Conclusion*

Accordingly, Defendant ODOC's Motion for Summary Judgment (Dkt. 20) is **GRANTED**.

**IT IS SO ORDERED** this 23rd day of June 2023.

```
_____
PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE
```